IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **CAROL SANDUSKY,**<br>**Plaintiff,**<br><br>**v.**<br><br>**BERGER LAW GROUP, P.C. and FIRST CITIZENS COMMUNITY BANK f/k/a HUNTINGDON VALLEY BANK**<br>**Defendants.** | **CIVIL ACTION**<br><br><br><br>**NO. 25-5698** |

**MEMORANDUM**

**HODGE, J.** **September 10, 2026**

Before the Court are Defendant Berger Law Group P.C.'s ("BLG") Motion to Dismiss the First Amended Complaint pursuant to Rules 12(b)(1) and 12(b)(6) (ECF No. 17 ("BLG Motion to Dismiss")), Defendant First Citizens Community Bank's ("FCCB") Motion to Dismiss Plaintiff's Complaint pursuant to Rule 12(b)(6) (ECF No. 23 ("FCCB Motion to Dismiss")), Plaintiff Carol Sandusky's ("Plaintiff") responses in opposition to the motions (ECF Nos. 25, 26), and FCCB and BLG's (collectively, "Defendants") replies thereto (ECF Nos. 27, 28). For the following reasons, Defendants' motions are granted.

## I. BACKGROUND

### A. Factual Background[1]

In considering the facts, the Court accepts all well-pleaded facts in the First Amended Complaint (ECF No. 12) as true. On or about June 10, 1994, Plaintiff purchased her home at 420 East Street Road, Feasterville, Pennsylvania, 19053, which has served as her primary residence

[1] The Court adopts the pagination supplied by the CM/ECF docketing system.

since. (ECF No. 12 ¶ 13.) On or about July 9, 2007, Plaintiff took out a non-purchase money home equity loan secured by her home (the "mortgage loan") through FCCB.[2] (*Id.* ¶ 14.)

### 1. 2011 Foreclosure and Bankruptcy

On July 5, 2011, Plaintiff filed for Chapter 13 bankruptcy in the Eastern District of Pennsylvania. (*Id.* ¶ 16.) On July 11, 2011, during the automatic stay of certain proceedings against the debtor imposed under 11 U.S.C. § 362, FCCB filed a mortgage foreclosure action in the Court of Common Pleas of Bucks County (the "2011 Foreclosure Action"). (*Id.* ¶¶ 17–18.) FCCB also filed a proof of claim in the bankruptcy proceeding. (*Id.* ¶ 19.) The proof of claim states that the arrearage on Plaintiff's mortgage loan was $6,493.14 as of July 5, 2011. (*Id.* ¶ 20.) On March 1, 2012, the bankruptcy court approved Plaintiff's amended Chapter 13 plan proposing to cure the full arrearage amount. (*Id.* ¶¶ 21–22.) FCCB did not object to Plaintiff's discharge or the Notice of Final Cure Payment served by the Chapter 13 Trustee. (*Id.* ¶ 24.) On September 22, 2016, the bankruptcy court discharged Plaintiff pursuant to 11 U.S.C. § 1328(a). (*Id.* ¶ 25.)

### 2. 2023 Debt Collection Communications

On March 7, 2023, BLG mailed Plaintiff a dunning letter notifying her that BLG was acting as a debt collector on behalf of FCCB. (*Id.* ¶¶ 26–27.) The dunning letter stated the mortgage loan was in default due to Plaintiff's failure to pay and noted that a total sum of $36,386.25 was due immediately. (*Id.* ¶ 29; ECF No. 12-3.) The amount due included a principal amount of $34,179.11, "Interest as of 3/7/23" of $1,248.32, a "Late Charge" of $164.65, and "Covid Interest" of $794.17. (ECF No. 12 ¶ 29.) An Act 91 Notice attached to the letter stated that Plaintiff must pay $4,909.82

[2] Plaintiff took out the loan with what was then Huntingdon Valley Bank, which subsequently merged with FCCB. (ECF No. 12 ¶ 14.) For clarity, the Court refers to the bank as FCCB throughout this memorandum, including during the period when the bank was operating as Huntingdon Valley Bank.

within thirty days to cure the default on the mortgage loan to avoid foreclosure on her home. (*Id.* ¶ 30; ECF No. 12-3 at 5–8.) The Act 91 Notice provided that the $4,909.82 consisted of principal in the amount of $2,796.88, "Interest & Covid Interest" of $1,948.29, and "Late Fees" of $164.65. (ECF No. 12 ¶ 31.) However, according to the monthly account statements FCCB provided to Plaintiff, as of the date of the Act 91 Notice, the actual amount due on the mortgage loan was only $4,082.72. (*Id.* ¶¶ 33–34.) These monthly statements show a lesser amount of total interest owed and do not state that any "Covid Interest" was due on the mortgage loan. (*Id.* ¶¶ 35–37.) Additionally, the statements do not state that the mortgage loan had been accelerated. (*Id.* ¶ 38.)

**3. 2023 Foreclosure**

On June 1, 2023, at the direction of FCCB, BLG filed a mortgage foreclosure complaint in the Court of Common Pleas of Bucks County (initiating the "2023 Foreclosure Litigation"). (*Id.* ¶ 39.) The mortgage foreclosure complaint states that the following amounts are due:

| | |
|---|---|
| Principal | $34,179.11 |
| Interest as of 5/31/23 | $ 1,812.72 |
| Late Charges | $ 263.44 |
| Collection Fees | $ 794.17 |
| Satisfaction Fee | $ 70.75 |
| Prior Attorney's Fees | $ 1,883.58 |
| Total: | $39,003.77 |

(*Id.* ¶ 40.) Plaintiff alleges that this complaint falsely and misleadingly sought interest in excess of the amounts and rates set forth in Plaintiff's mortgage statements and loan documents, improperly sought a "Collection Fee" and "Satisfaction Fee" which were not incurred and not due pursuant to the loan documents, and mischaracterized and sought "Prior Attorney's Fees" which arose from the improper and illegal 2011 Foreclosure Action. (*Id.* ¶ 41.) Plaintiff also asserts that during the 2023 Foreclosure Litigation proceedings, FCCB stopped sending Plaintiff the monthly mortgage statements required under federal and Pennsylvania law, preventing Plaintiff from learning that

FCCB continued to improperly assess excessive and unreasonable fees and charges related to her mortgage loan. (*Id.* ¶ 72.)

The 2023 Foreclosure Litigation was temporarily stayed while it was in the court's foreclosure diversion program. (*Id.* ¶¶ 42–45.) On December 27, 2023, before the expiration of the stay, BLG sent Plaintiff's then-counsel, Alexander Tuttle ("Tuttle"), a notice of intent to take default judgment; BLG did not serve a copy of the notice on Plaintiff.[3] (*Id.* ¶¶ 46–47.) Unbeknownst to Plaintiff, Tuttle had left the country without notice, ceased communication with Plaintiff, and reportedly began neglecting his clients' cases. (*Id.* ¶ 49.) On January 9, 2024, BLG filed a praecipe to enter default in the 2023 Foreclosure Litigation. (*Id.* ¶ 50.) Plaintiff asserts that the praecipe falsely stated that a copy of the notice of intent to take default judgment was served directly on Plaintiff and included an additional $12,225.32 in "Misc" fees, bringing the total judgment amount to $52,703.28. (*Id.*) The default judgment was entered without Plaintiff's knowledge and before Plaintiff's time to respond to the mortgage foreclosure complaint had expired. (*Id.* ¶ 51.) On January 30, 2024, BLG caused a writ of execution to be issued listing Plaintiff's property for sheriff's sale. (*Id.* ¶ 52.)

On May 8, 2024, Plaintiff again filed for Chapter 13 bankruptcy in the Eastern District of Pennsylvania. (*Id.* ¶ 53.) BLG filed a proof of claim on behalf of FCCB in the bankruptcy action on May 10, 2024. (*Id.* ¶ 54.) The proof of claim stated a total amount due of $65,970.14, including $23,807.22 in "Legal Fees" and $3,782.29 in "Misc Fees and costs." (*Id.*) The proof of claim did not identify any of the fees or costs as having been accrued during the 2011 Foreclosure Action. (*Id.* ¶ 55.) On May 20, 2024, BLG filed an amended proof of claim, which lowered the "Misc Fees

[3] The First Amended Complaint states that BLG sent the notice of intent to take default judgment on December 27, 2024, rather than December 27, 2023. (ECF No. 12 ¶ 46.) Given the timeline of events alleged, the Court attributes this to scrivener's error and corrects the date to 2023 above.

and costs" amount from $3,782.29 to $794.17 and stated that the total payoff due was $62,982.02. (*Id.* ¶¶ 56–57.) On September 6, 2024, the bankruptcy court dismissed Plaintiff's case.[4] (*Id.* ¶ 59.)

During the bankruptcy proceedings, the Court of Common Pleas of Bucks County continued the sheriff's sale of Plaintiff's home to October 11, 2024. (*Id.* ¶ 60.) Before the sheriff's sale was to occur, Plaintiff entered into a sale agreement with a third party. (*Id.* ¶ 61.) Plaintiff requested a payoff statement from Defendants to complete the sale. (*Id.* ¶ 62.) BLG provided a payoff statement that sought $36,524.12 in attorney's fees, which Plaintiff alleges was significantly higher than the amount stated in the amended proof of claim filed in the bankruptcy court, and improperly demanded post-acceleration late fees and additional "misc." fees not due. (*Id.* ¶¶ 63–66; *see also* ECF Nos. 12-7, 12-8.) Plaintiff requested a brief continuance of the sheriff's sale to allow the buyers time to finish the underwriting of their purchase money mortgage. (ECF No. 12 ¶ 67.) BLG and FCCB denied the request and proceeded with the sheriff's sale on October 11, 2024, at which time the property was sold to a third-party bidder. (*Id.*) After the sale, BLG added $8,461.94 in fees on a new payoff statement. (*Id.* ¶ 68.)

Plaintiff subsequently retained new counsel and filed a petition to strike the default judgment, alleging that BLG had made false statements in the default judgment certification and failed to comply with the Pennsylvania Rules of Civil Procedure in obtaining the judgment. (*Id.* ¶¶ 48, 50–51, 70.) Plaintiff's petition was granted and the default judgment was stricken. (*Id.* ¶ 71.) On April 8, 2025, BLG filed a motion for summary judgment on FCCB's behalf in the 2023 Foreclosure Litigation, demanding a total judgment of $88,119.70. (*Id.* ¶¶ 73–74.) This total included $44,889.07 in attorney's fees, which was 130% more than the principal balance owed on

[4] The First Amended Complaint states that the bankruptcy case was dismissed on September 6, 2025 (ECF No. 12 ¶ 59), which the Court attributes to scrivener's error based on the case docket. *See In re Sandusky*, No. 24-11570 (Bankr. E.D. Pa. Sept. 6, 2024), Dkt. No. 23.

the mortgage loan. (*Id.* ¶ 74.) Plaintiff alleges that the motion failed to itemize the attorney's fees due in a concerted effort to conceal the fact that BLG and FCCB were improperly seeking attorney's fees that were actually related to the 2011 Foreclosure Action. (*Id.* ¶ 75.) Plaintiff further alleges that the attorney fee amount is "patently unreasonable" because it includes fees that were not incurred during the 2023 Foreclosure Litigation, fees incurred disputing Defendants' false and misleading statements in the default judgment certification, fees and interest that were not permitted because FCCB failed to comply with applicable federal statutes and regulations and state law, and fees not subject to the fee-shifting provision of the mortgage agreement. (*Id.* ¶ 76.)

Plaintiff asserts that Defendants' conduct has caused Plaintiff significant emotional distress, humiliation, embarrassment, and fear of losing her home, and prevented her from selling her home to cure any legitimate mortgage balance owed to FCCB. (*Id.* ¶ 77.)

### B. Procedural History

Plaintiff filed her initial complaint on October 2, 2025. (ECF No. 1.) BLG filed a motion to dismiss on December 5, 2025. (ECF No. 11.) On December 26, 2025, Plaintiff filed the First Amended Complaint (ECF No. 12), and the Court thereafter denied BLG's motion to dismiss as moot (ECF No. 13). In the First Amended Complaint, Plaintiff brings claims against BLG under the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §§ 1692e,1692f; against both Defendants under the Pennsylvania Fair Credit Extension Uniformity Act ("FCEUA"), 73 Pa. C.S. § 2270.1 *et seq.*; and against FCCB under the Pennsylvania Unfair Trade Practices and Consumer Protection Law ("UTPCPL"), 73 Pa. C.S. § 201-1 *et seq.* On January 29, 2026, BLG filed the BLG Motion to Dismiss. (ECF No. 17.) FCCB filed the FCCB Motion to Dismiss on February 12, 2026. (ECF No. 23.) The motions are now ripe for disposition.

## II. LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(1), a court must grant a motion to dismiss if it lacks subject matter jurisdiction to hear a claim. *In re Schering Plough Corp. Intron/Temodar Consumer Class Action*, 678 F.3d 235, 243 (3d Cir. 2012). Where a Rule 12(b)(1) motion is filed prior to an answer, it will be considered a facial challenge to jurisdiction—i.e., that the complaint does not allege sufficient grounds to establish subject matter jurisdiction. *See Hendrick v. Aramark Corp.*, 263 F. Supp. 3d 514, 517 (E.D. Pa. 2017). When considering a facial challenge, a court must apply the same standard of review as it would for a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). *Id.*

To survive a motion to dismiss under Rule 12(b)(6), a complaint must put forth "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)). This requires more than "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Id.* at 678 (citing *Twombly*, 550 U.S. at 555). "To survive dismissal, 'a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" *Tatis v. Allied Interstate, LLC*, 882 F.3d 422, 426 (3d Cir. 2018) (quoting *Iqbal*, 556 U.S. at 678).

Applying the principles of *Twombly* and *Iqbal*, the Third Circuit has articulated a three-part analysis to determine whether a complaint will survive a Rule 12(b)(6) motion. *See Santiago v. Warminster Twp.*, 629 F.3d 121, 130 (3d Cir. 2010). A court is tasked with: "(1) identifying the elements of the claim, (2) reviewing the complaint to strike conclusory allegations, and then (3) looking at the well-pleaded components of the complaint and evaluating whether all of the

elements identified in part one of the inquiry are sufficiently alleged." *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011).

## III. DISCUSSION

### A. FDCPA Claim

Plaintiff alleges that BLG violated the FDCPA by making false and misleading demands for amounts due in connection with the collection of Plaintiff's mortgage loan debt, which were contained in the payoff statements and the motion for summary judgment (collectively, the "debt collection communications"). (ECF No. 12 ¶¶ 81–82.) BLG moves to dismiss the FDCPA claim under Rule 12(b)(1) for lack of subject matter jurisdiction. (ECF No. 17 at 1.) BLG asserts that Plaintiff lacks standing to bring an FDCPA claim because she failed to allege that she suffered a justiciable injury-in-fact, as she has not pled facts demonstrating that the purported actionable debt collection communications caused her to take detrimental actions or suffer any loss based on the allegedly inflated debt. (ECF No. 17-2 at 6, 10.) Alternatively, BLG argues that the claim should be dismissed under Rule 12(b)(6) for failure to state a claim.

#### 1. Article III Standing

"To establish standing under Article III, a plaintiff must show that she suffered: '(1) an injury-in-fact; (2) that is fairly traceable to the defendant's challenged conduct; and (3) that is likely to be redressed by a favorable judicial decision.'" *Huber v. Simon's Agency, Inc.*, 84 F.4th 132, 144 (3d Cir. 2023) (quoting *St. Pierre v. Retrieval-Masters Creditors Bureau, Inc.*, 898 F.3d 351, 356 (3d Cir. 2018)). Concrete injuries may be tangible (e.g., physical or monetary harms) or intangible (e.g., reputational harms). *See TransUnion LLC v. Ramirez*, 594 U.S. 413, 425 (2021). To analyze whether a plaintiff's intangible injury is concrete for purposes of Article III standing, the Third Circuit has adopted the "kind of harm" test, which asks whether the kind of harm a

plaintiff alleges is comparable to the kind of harm caused by the comparator tort at common law. *Barclift v. Keystone Credit Servs., LLC*, 93 F.4th 136, 145 (3d Cir. 2024). In the FDCPA context, a plaintiff asserting a § 1692e violation must establish that the harm suffered from a false or misleading statement from a debt collector "bears a sufficiently close relationship to the harm from fraudulent misrepresentation." *Huber*, 84 F.4th at 148 (citation modified) (quoting *TransUnion*, 594 U.S. at 433). The harm traditionally recognized as a basis for fraudulent misrepresentation is not the mere receipt of a misleading statement or confusion—it is "the physical, monetary, or cognizable intangible harm, such as a reputational or emotional harm, that may follow from a plaintiff's *reliance* upon the misrepresentation." *Id.* (citation modified).

The Court finds in this matter that Plaintiff fails to establish Article III standing with respect to the FDCPA claim. Plaintiff alleges that BLG violated the FDCPA by making false and misleading demands for amounts due in connection with the collection of Plaintiff's mortgage loan debt in the debt collection communications. (ECF No. 12 ¶¶ 81–82.) Plaintiff further alleges that BLG's actions caused Plaintiff to experience significant emotional distress, humiliation, embarrassment, and fear of losing her home, as well as damages that included interfering with Plaintiff's attempts to sell her home and cure any legitimate mortgage loan balance owed to FCCB. (*Id.* ¶¶ 77, 86.) But Plaintiff does not plead any facts connecting her receipt of the allegedly false or misleading debt collection communications with any tangible losses she sustained, such as payments made on the improperly inflated debt amounts. And while Plaintiff has alleged that BLG's motion for default judgment in the 2023 Foreclosure Litigation led to the sheriff's sale of Plaintiff's home—which likely would qualify as a tangible loss—she does not suggest that the default judgment was obtained as a result of the allegedly improper debt collection communications.

Furthermore, Plaintiff does not plead facts demonstrating that the intangible harms she alleges resulted from her *reliance on* the false or misleading statements. *See Huber*, 84 F.4th at 148. Plaintiff fails to allege that she "took some action, or alternatively that [s]he failed to act, as a result of" BLG's statements. *See Perez v. I.C. Sys., Inc.*, Civ. No. 21-14883, 2022 WL 17991143, at *5 (D.N.J. Dec. 29, 2022). Plaintiff makes only the conclusory allegation that she "suffered damages and other harm as a direct result of Defendants actions," without explaining how her reliance on the debt collection statements caused those harms. (ECF No. 12 ¶ 87.) Plaintiff therefore fails to show that she sustained the kind of injury required for Article III standing. *See Credle v. World Omni Fin. Corp.*, No. 26-CV-1323, 2026 WL 710002, at *3 (E.D. Pa. Mar. 12, 2026) (dismissing Fair Credit Reporting Act claim for lack of standing where Plaintiff's allegations of emotional and mental harm were "too undeveloped and conclusory to allege standing").

In opposition to BLG's Motion to Dismiss, Plaintiff asserts that she suffered concrete harms in the form of (1) "being forced to cancel the arm's length sale of [her] home because [BLG sold her] house at execution sale on a fraudulently obtained default judgment" and (2) hiring counsel to mitigate BLG's illegal actions. (ECF No. 26 at 10.) Plaintiff's argument fails for two reasons. First, as noted above, Plaintiff fails to plead facts suggesting that the default judgment itself resulted from BLG's debt collection communications. Moreover, Plaintiff does not allege that the cancellation of the sale of her home to a third party was due to BLG's debt collection communications. Rather, Plaintiff asserts that she was unable to sell the house to her preferred buyer because BLG declined to delay the sheriff's sale to allow the buyer to finish the underwriting of their purchase money mortgage. (ECF No. 12 ¶ 67.) Second, the First Amended Complaint does not allege that the attorney's fees Plaintiff incurred in challenging the default judgment were the result of BLG's debt collection communications or otherwise constitute damages relating to her

FDCPA claim. Plaintiff first raised this argument not in the First Amended Complaint but rather in her responses in opposition to the motions to dismiss. The Court does not consider arguments raised for the first time on opposition, and therefore will not consider Plaintiff's allegations on this point now. *Pennsylvania ex rel. Zimmerman v. PepsiCo, Inc.*, 836 F.2d 173, 181 (3d Cir. 1988) ("[I]t is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss.").

Because the Court finds that Plaintiff has failed to establish standing to bring the FDCPA claim, it need not and does not address BLG's Motion to Dismiss the claim under Rule 12(b)(6). The FDCPA claim is dismissed without prejudice pursuant to Rule 12(b)(1).

**B. FCEUA and UTPCPL Claims**

Plaintiff brings a claim under the FCEUA against both Defendants, alleging that they engaged in unfair and deceptive acts and practices in violation of the statute by sending false or misleading payoff statements and by filing the motion for summary judgment in the 2023 Foreclosure Litigation, and that those actions also constitute a violation of the UTPCPL. (ECF No. 12 ¶¶ 93–94.) Plaintiff also brings a separate claim against FCCB for violation of the UTPCPL. (*Id.* ¶ 100.) Both Berger and FCCB move to dismiss the FCEUA claim, arguing: (1) the FCEUA does not contain a private right of action and therefore may not be pled as a standalone claim; and (2) Plaintiff cannot bring the claim as a violation of the UTPCPL because she has failed to plead ascertainable loss under the UTPCPL. (ECF No. 17-2 at 21–25; ECF No. 23-1 at 4–7.) Because both the UTPCPL and FCEUA claims require Plaintiff to demonstrate ascertainable loss under the UTPCPL, the Court turns to that issue.[5]

[5] The FCEUA does not contain a private right of action; instead, it is enforced through the remedial provision of the UTPCPL. *Kaymark v. Bank of Am., N.A.*, 783 F.3d 168, 182 (3d Cir. 2015), *abrogated in part on other grounds by Obduskey v. McCarthy & Holthus LLP*, 586 U.S. 466

**1. Ascertainable Loss Under the UTPCPL**

The UTPCPL prohibits "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce . . . ." 73 Pa. C.S. § 201-3. The statute enumerates specific categories of unfair methods of competition and unfair or deceptive acts in § 201-2, including a catch-all provision for "any other fraudulent or deceptive conduct which creates a likelihood of confusion or of misunderstanding." 73 Pa. C.S. § 201-2(4)(xxi). Additionally, the UTPCPL provides a private right of action to "[a]ny person who purchases or leases goods or services primarily for personal, family or household purposes and thereby suffers any ascertainable loss of money or property, real or personal, as a result of" the defendant's "use or employment . . . of a method, act or practice" prohibited under the Act. 73 Pa. C.S. § 201-9.2(a). The UTPCPL should be "liberally construed to effectuate its objective of protecting the consumers of this Commonwealth from fraud and unfair or deceptive business practices." *Ash v. Cont'l Ins. Co.*, 932 A.2d 877, 881 (Pa. 2007). However, even given the liberal construction of the UTPCPL, an actual loss of money or property is required to state a cognizable claim under the Act. *Benner v. Bank of Am., N.A.*, 917 F. Supp. 2d 338, 360 (E.D. Pa. 2013).

To state a claim under the UTPCPL, a plaintiff must allege (1) conduct that is likely to deceive a consumer acting reasonably under similar circumstances; (2) justifiable reliance on defendant's misrepresentation or deceptive conduct; and (3) that this justifiable reliance caused ascertainable loss. *See Vassalotti v. Wells Fargo Bank, N.A.*, 732 F. Supp. 2d 503, 510–11 (E.D. Pa.

---

(2019); *see also Gress v. Freedom Mortg. Corp.*, 386 F. Supp. 3d 455, 470 (M.D. Pa. 2019) (dismissing separate count for violation of the FCEUA but allowing plaintiffs to allege an FCEUA violation as an additional ground under their UTPCPL claim). Accordingly, the Third Circuit has explained that "[i]f the FCEUA can only be enforced to the extent the UTPCPL's private remedy is invoked, then it follows that [a plaintiff] cannot state a claim for relief under the FCEUA if [s]he cannot state a claim for relief under the UTPCPL." *Kaymark*, 783 F.3d at 182.

2010). A plaintiff satisfies the third requirement by demonstrating an "ascertainable loss of money or property, real or personal." *Kaymark*, 783 F.3d at 180 (citation modified).

Plaintiff alleges that she incurred the following ascertainable losses as a result of Defendants' conduct:

a. The interference with Plaintiff's property rights in her home by demanding amounts that are not owed under the mortgage and applicable federal and state law as a precondition to conveying title to Plaintiff's home back to Plaintiff;
b. The forced cancellation of the sale of her home to a third party based on the improper and falsely certified default foreclosure judgment and sheriff's sale by the Defendants;
c. Additional interest and fees accrued following the forced cancellation of her sales contract, and;
d. Additional attorney fees and costs incurred in disputing the false statements made by the Defendants, including additional attorney fees added to Plaintiff's account when BERGER and FCCB unsuccessfully attempted to defend their improper and falsely certified default judgment in state court.

(ECF No. 12 ¶¶ 95, 101.)

While Plaintiff makes the conclusory allegation that Defendants interfered with her property rights in her home by demanding improper fees related to her mortgage loan debt, she does not plead any facts indicating that she paid any of those fees—or indeed made any of her mortgage loan payments since the initiation of the 2023 Foreclosure Litigation—or that she was removed from her home due to her inability to pay the fees. Without more, Plaintiff fails to sufficiently allege ascertainable losses in the form of interference with her property rights. *See Murphy v. Bank of Am., N.A.*, Civil Action No. 13-5719, 2016 WL 1020969, at *6 (E.D. Pa. Mar. 14, 2016) (dismissing UTPCPL claims where plaintiff failed to allege that he paid any improper fees or costs related to a vacated default judgment and continued to live in the mortgaged property). Likewise, Plaintiff's assertion that she continued to accrue, but did not pay, the additional improper interest and fees following the cancellation of the sale of her home is insufficient to allege ascertainable loss. *See Benner*, 917 F. Supp. 2d at 359–60 (explaining that a fee charged to but not

paid by the plaintiff "is an outstanding liability, but does not constitute a 'loss of money or property'"); *see also Jarzyna v. Home Props., L.P.*, 185 F. Supp. 3d 612, 626 (E.D. Pa. 2016) (citing *Kaymark*, 783 F.3d at 180).

Plaintiff also alleges that she sustained ascertainable losses when she was forced to cancel the sale of her home to a third-party buyer based on the improper and falsely certified default foreclosure judgment and sheriff's sale. But Plaintiff has not pled facts tying the cancellation of the sale of the home to her reliance on Defendants' alleged conduct. Plaintiff only asserts that BLG and FCCB refused to agree to a continuance of the sheriff's sale to allow the buyers to finish underwriting their purchase money mortgage, thereby causing the sheriff's sale to go through as scheduled on October 11, 2024. (ECF No. 12 ¶ 67.) There is no indication in the First Amended Complaint that Plaintiff did not go through with the sale due to her reliance on the payoff statements or otherwise decided not to move forward with an alternate sale for similar reasons.

Additionally, Plaintiff's attorney's fees incurred in disputing the summary judgment filing in the 2023 Foreclosure Litigation do not by themselves constitute ascertainable loss. In *Grimes v. Enter. Leasing Co. of Philadelphia, LLC*, 105 A.3d 1188, 1191–92 (Pa. 2014), the Supreme Court of Pennsylvania reviewed a lower court judgment that a rental car company's alleged threats to collect improper fees and the costs that the appellee incurred in hiring counsel to halt those collection efforts satisfied the ascertainable loss requirement under the UTPCPL. The court considered whether a plaintiff may satisfy the ascertainable loss requirement "by voluntarily hiring an attorney and allegedly incurring litigation costs to challenge allegedly wrongful conduct, even where . . . the plaintiff paid no money to the defendant as a result of that conduct." *Id.* at 1192. The appellee argued that attorney's fees could meet the ascertainable loss requirement "if the costs and fees were a direct result of the act giving rise to the lawsuit." *Id.* The Supreme Court of

Pennsylvania held that the mere acquisition of counsel does not satisfy the ascertainable loss requirement. *Id.* at 1193. The court also distinguished the case from those where plaintiffs met the ascertainable loss requirement by alleging a separate, specific loss of money due to defendants' conduct. *Id.* at 1194.

Here, the Court encounters essentially the same question as the *Grimes* court: Whether a plaintiff who hires counsel to dispute conduct allegedly prohibited by the UTPCPL may allege that counsel's fees constitute ascertainable loss as required for a UTPCPL claim. *Grimes* compels the Court to conclude that the fees Plaintiff accrued in defending the 2023 Foreclosure Litigation cannot alone satisfy the ascertainable loss requirement.

Finally, in her opposition, Plaintiff argues that she has alleged ascertainable losses because "[t]he complaint makes it sufficiently clear that, had defendants not made fraudulent certifications to the Court, the loan would have been paid off." (ECF No. 25 at 13.) The Court is not convinced that the First Amended Complaint is "sufficiently clear" on this point, and Plaintiff cites nothing in the First Amended Complaint that provides information in support. Moreover, Plaintiff here asserts the kind of loss that the Third Circuit has explained is "too speculative, standing alone, to qualify for the protection of the UTPCPL." *Kaymark*, 783 F.3d at 181 (finding plaintiff's assertion that he would have cured his debt but for defendant's imposition of allegedly inflated fees "too speculative" to support a UTPCPL claim).

Thus, the Court finds that Plaintiff fails to plausibly allege ascertainable loss under the UTPCPL. The UTPCPL claim is therefore dismissed without prejudice. To the extent that Plaintiff alleges an FCEUA violation as an additional ground under a UTPCPL claim, that claim is also dismissed without prejudice for the same reasons.

## IV. CONCLUSION

For the foregoing reasons, Defendants' Motions to Dismiss are granted. An appropriate Order follows.

**BY THE COURT:**

**/s/ Hon. Kelley B. Hodge**

**HODGE, KELLEY B., J.**